

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*James Wallner*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

DIRECT: 410-209-4971
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
James.Wallner@usdoj.gov

March 29, 2011

Timothy Sullivan, Esq.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland ~~21075~~ 20770

Re:   *United States v. Eric Brown*
      Criminal No. WDQ-09-0183

Dear Mr. Sullivan:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). This offer is contingent upon the acceptance of plea offers made by this Office to the following co-defendants, Randolph Edison, Rainbow Williams, and Ray Olivis. If this offer has not been accepted by **April 13, 2011**, and/or any of the identified co-defendants have not accepted their offer by the same date, this offer will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.   The Defendant agrees to plead guilty to Count One of the Superseding Indictment now pending against him, charging him with conspiracy to conduct and participate in the activities of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial are as follows:

   a.   That the criminal enterprise set out in the Indictment existed;

   b.   That the enterprise affected interstate or foreign commerce;

   c.   That the Defendant was associated with or employed by the

Revised 8/8/08



Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 2 of 8

    d.  That the enterprise engaged in a pattern of racketeering activity, and;

    e.  That the Defendant unlawfully, willfully and knowingly conspired with two or more persons to conduct and participate in the affairs of that enterprise through that pattern of racketeering activity.

## Penalties

  3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is twenty (20) years, a fine of $250,000 and a period of supervised release not to exceed three years. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

  4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

E.B.

Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 3 of 8

twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

<u>Advisory Sentencing Guidelines Apply</u>

        5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the

*E.B.*

Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 4 of 8

advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.   This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a.   Guideline Stipulations

   The base offense level for a violation of 18 U.S.C. § 1962(d) is the greater of 19 or the offense level applicable to the underlying racketeering activity, pursuant to U.S.S.G. § 2E1.1(a).

      i.   The parties stipulate and agree that the underlying racketeering activity in this case involved a conspiracy to distribute and possess with the intent to distribute one hundred grams or more of heroin in violation of 21 U.S.C. § 846.

      ii.   The parties stipulate and agree that the base offense level is thirty (30) because during the period of the conspiracy the Defendant conspired to distribute and possess with the intent to at least 700 grams of heroin but less than one kilogram of heroin, pursuant to U.S.S.G. § 2D1.1(c)(5). The base offense is increased upward by four (4) levels because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(a). The base offense is further increase by two (2) levels because the distribution occurred inside a correctional facility, pursuant to U.S.S.G. § 2D1.1 (b)(3). The base offense level is, therefore, agreed to be 36.

   b.   Acceptance of Responsibility

   This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

E.B.

c.   Plea Pursuant to Rule 11(c)(1)(C)

*[handwritten: 151 months]* *[initials: E.B. TJS]*

The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence between ~~168 and 210 months~~ imprisonment in the custody of the Bureau of Prisons is the appropriate sentence in this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

7.   The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.   This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute. If the Defendant intends to seek a sentence outside the final advisory guideline range, the Defendant agrees to notify this Office of the factors under 18 U.S.C. § 3553(a) on which the Defendant intends to rely no later than fourteen (14) days prior to the date of sentencing.

### Obligations of the United States Attorney's Office

9.   At the time of sentencing, this Office will recommend a sentence *[handwritten: as agreed by the parties pursuant to Rule 11(c)(1)(C)]* ~~within the final guideline range~~, and will move to dismiss any open counts or Indictments against the Defendant. *[initials: E.B., TJS]*

### Waiver of § 851 Enhancement Notice

10.   In exchange for the Defendant's plea of guilty to Count One of the Indictment pursuant to this plea agreement, this Office agrees to withdraw the notice of the Defendant's prior felony drug convictions pursuant to 21 U.S.C. § 851. Accordingly, this Office will not rely on the Defendant's prior felony drug convictions to enhance the mandatory minimum sentence to which the Defendant is subject. Nothing in this paragraph, however, shall be construed to prevent the Court from relying on the Defendant's prior convictions to calculate the Defendant's criminal history under the sentencing guidelines or in determining whether he is a career offender or an armed career criminal.

11.   The parties reserve the right to bring to the Court's attention at the time of

*[initials: E.B.]*

Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 6 of 8

sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:(i) the Defendant reserves the right to appeal from any sentence greater than a term of imprisonment of ~~210~~ months; /s/ E.B. TJS
   and (ii) this Office reserves the right to appeal from any sentence less than a term of imprisonment of ~~168~~ months. /s/ E.B. TJS

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this

E.B.

Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 7 of 8

agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

*E.B.*

Plea Agreement
U.S. v. Eric Brown
WDQ-09-0183
Page 8 of 8

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
James T. Wallner
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-26-11
Date

_____
Eric Brown

I am Eric Brown attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

04/26/11
Date

_____
Timothy Sullivan, Esq.

## ATTACHMENT A

## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the Government would have proved the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

### The Racketeering Enterprise

1. The Black Guerilla Family ("BGF"), also known as the "Black Family," the "Family" or the "Black Vanguard," is a nationwide gang operating in prison facilities and major cities throughout the United States. Founded in California in the 1960s and introduced into the Maryland correctional system in the mid 1990s, BGF is now one of the most powerful gangs in the state. Although traditionally a prison-based gang, BGF in Maryland is increasingly active and well organized on the streets of Baltimore City, Maryland.

2. BGF factions are currently operating in Baltimore City as well as various prison facilities in Maryland.

3. BGF leaders, collectively known as the "Supreme Bush," directed the activities of BGF members in Maryland. Reflecting the paramilitary nature of the BGF, the "Supreme Bush" was organized according to a strict rank structure which included a Supreme Commander, Lieutenant Commander and Ministers of Justice, Defense, Finance, Intelligence and Education. Within each correctional institution and neighborhood of Baltimore City in which BGF had established a presence, a local organizational structure was put in place. These so-called "Bubble Regimes" mirrored the structure of the Supreme Bush and so included its own Commander, Lieutenant Commander and various ministers. The commander of each "Bubble Regime" was appointed by, and reported to, the Supreme Bush.

4. BGF members were required to follow a strict code of conduct. BGF members who failed to adhere to this code were subjected to various forms of discipline, to include physical violence.

5. BGF members were expected to recruit new members (known as "Seeds") into BGF and familiarize those new members with the history, doctrine and code of conduct of the organization.

6. BGF members engaged in various criminal activities on the streets of Baltimore City, including, but not limited to, drug-trafficking, extortion, robbery, bribery and money laundering, retaliation against witnesses and obstruction of justice.

7. BGF members engaged in various criminal activities inside the Maryland Correctional System, including but not limited to, drug-trafficking, extortion, robbery, bribery and money laundering, retaliation against witnesses and obstruction of justice.

8. BGF members arranged for the smuggling of narcotics, cellular telephones, tobacco, food and other contraband prohibited by correctional facility regulations into Maryland correctional facilities.

9. BGF members recruited and paid employees of prison facilities, including corrections officers, to assist BGF and its members in the smuggling of contraband, the collection of intelligence and in the concealment of BGF's criminal activities.

10. BGF members, with the assistance of corrections officers and employees, engaged in an extortion scheme by which prison inmates were required to pay for "protection." Inmates who refused to pay for such "protection" were targeted for violence by members of BGF.

11. BGF members used the funds procured through drug trafficking, extortion, and the sale of contraband to enrich themselves and to further the activities of the organization, including, but not limited to drug-trafficking.

12. BGF members protected and broadened their control of the Baltimore City drug trade through violence and intimidation.

13. BGF members protected and broadened their control of the underground "prison economy" in Maryland correctional facilities through violence and intimidation.

14. BGF, including its leadership, members and associates, constituted an "enterprise" as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

15. The purposes of the enterprise included the following:

a. Preserving and protecting the power, territory and profits of the enterprise through the use of violence, threats of violence, intimidation, extortion, armed robbery, money laundering, bribery, and narcotics trafficking;

b. Promoting and enhancing the enterprise and its members' and associates' activities through the use of violence, threats of violence, intimidation, extortion, armed robberies, money laundering, bribery, and narcotics trafficking, retaliation against witnesses and

2

obstruction of justice;

        c.     Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates, through violence and threats of violence;

        d.     Generating financial profits for the furtherance of the enterprise in Maryland;

        e.     Providing financial support and information to gang members, including those who were incarcerated for committing acts of violence or other offenses; and

        f.     Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct and prevent law enforcement officers from identifying the offender, apprehending the offender and trying and punishing the offender.

## The Racketeering Conspiracy

16.    Beginning in or about 2006 and continuing through June 2010, in the District of Maryland and elsewhere, the Defendant, Eric Brown, being a person employed by and associated with BGF, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving narcotics trafficking, indictable under 21 U.S.C. §§ 841 and 846; multiple acts involving robbery in violation of Maryland Criminal Law Code Section 3-402 and the Common Law of Maryland, extortion, in violation of Maryland Criminal Law Code Section 3-701, and bribery in violation of Maryland Criminal Law Code Section 9-201; and multiple acts indictable under 18 U.S.C. § 1513 (retaliation against a witness or an informant); 18 U.S.C. § 1956(h) (money laundering); and 18 U.S.C. § 1951 (interference with commerce by robbery).

17.    The Defendant committed, or agreed that a conspirator would commit, at least two acts of racketeering activity in the conduct of the affairs of the enterprise, including, drug trafficking.

18.    Based on the facts readily provable by the Government, it was foreseeable to the Defendant that members of the conspiracy possessed with the intent to distribute at least 700 grams but less than one kilogram of heroin.

19.    During the course of the conspiracy, the Defendant acted as an organizer and leader of the BGF by enforcing discipline among gang members and by directing BGF members to engage in, among other things, drug trafficking.

### Acts in Furtherance of the Enterprise

20. At various times during the conspiracy, **ERIC BROWN**, sold quantities of narcotics, including heroin, for his enrichment and the enrichment of the BGF.

21. Between in or about April 2008 and December 2008, **ERIC BROWN** transferred approximately $3,035.00 into a pre-paid debit card account. These funds represented, at least in part, the proceeds of the BGF's illegal activities, to include extortion and drug trafficking

22. On or about November 18, 2008, during an intercepted phone conversation, a BGF member at North Branch Correctional Institution (NBCI) asked **ERIC BROWN** to arrange for a female courier to smuggle contraband, including heroin, into NBCI.

23. In or about January 2009 to April 2009, **ERIC BROWN** extorted a fellow inmate for protection from violence at the hands of BGF members.

24. Between in or about January 2009 to April 2009, **ERIC BROWN** assaulted an inmate who failed to make a timely extortion payment to BGF.

25. In February 2009, during an intercepted phone conversation, **ERIC BROWN** directed a person to deliver "five cans" of suspected contraband to another individual who would, in turn, have the contraband smuggled into the Maryland Transition Center (MTC), where **BROWN** was incarcerated. **BROWN** also instructed person to give the other individual $300 for payment to a corrections employee who was helping BGF smuggle contraband into the prison.

26. At various times during the conspiracy **ERIC BROWN** bribed correctional officers to smuggle contraband, including heroin into correctional facilities. In particular, on or about February 23, 2009, **ERIC BROWN** provided $50.00 to a Corrections Officer affiliated with BGF via pre-paid debit card.

27. On or about February 24, 2009, during an intercepted phone conversation, **ERIC BROWN** requested that a correctional employee affiliated with BGF smuggle contraband into MTC.

28. On or about February 25, 2009, during an intercepted phone conversation, **ERIC BROWN** directed a person to deliver narcotics to a Corrections Officer affiliated with BGF so that the Corrections Officer could smuggle the narcotics into MTC.

29. On or about February 27, 2009, during an intercepted phone conversation, a Corrections Officer affiliated with BGF informed **ERIC BROWN** that she had spent the money loaded onto her pre-paid debit card.

30. In or about March 2009, a Corrections Officer affiliated with BGF attempted to smuggle two cell phones into MTC on behalf of **ERIC BROWN**.

31. On or about March 8, 2009, during an intercepted phone conversation, **ERIC BROWN** and a federal inmate, who was incarcerated in the Maryland Correctional Adjustment Center, discussed the fact that a Corrections Officer, was smuggling contraband into the prisoners at the MCAC. The federal inmate asked **BROWN** to speak to the correctional officer about smuggling contraband into the facility on the federal inmate's behalf.

Rod J. Rosenstein
United States Attorney

By:_____
James T. Wallner
Assistant United States Attorney

I have read this statement of facts, and carefully reviewed every part of it with my attorney. I understand it, and I acknowledge that it is true and correct. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_4/27/11_
Date

_[signature]_
Eric Brown

I am Eric Brown's attorney. I have carefully reviewed every part of this statement of facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_04/27/11_
Date

_[signature]_
Timothy Sullivan, Esq

5